### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

|  | : |  |
|---|---|---|
| KERSTEIN, | : |  |
|  | : | Civil Action No. 07-4156 (PGS) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | **REPORT AND RECOMMENDATION** |
|  | : |  |
| PLAST-O-MATIC VALVES et al., | : |  |
|  | : |  |
|  | : |  |
| Defendants. | : |  |
| _____ | : |  |

**SALAS, United States Magistrate Judge**

Before this Court is Plaintiff James Kerstein's ("Plaintiff" or "Kerstein") motion to remand [Docket Entry No. 5]. Pursuant to Local Civil Rule 72.1(a)(2), The Honorable Peter G. Sheridan, United States District Judge, has referred the motion to the undersigned for report and recommendation. For the reasons set forth below, the undersigned recommends granting the motion to remand.

### I. BACKGROUND

On July 24, 2007, the Plaintiff filed a one count complaint in the Superior Court of New Jersey against his former employer Plast-O-Matic Valves ("POM") and its majority shareholder Judith DeLorenzo ("DeLorenzo"). The Plaintiff's complaint alleges that he was fired in violation of New Jersey's Conscientious Employee Protection Act ("CEPA") N.J.S.A § 34:19-1 *et seq*. because he objected to actions taken by the Defendants as unlawful or in violation of public policy.

POM is a privately held corporation that manufactures plastic valves. POM was operated by Bruce DeLorenzo the company's founder and sole shareholder until his death in 1999. Bruce DeLorenzo left the company in seven trusts. The largest of these trusts was a Martial Trust for the benefit of Bruce DeLorenzo's second wife, Judith DeLorenzo. The Marital Trust is the majority shareholder of POM. The remaining trusts were for the benefit of Bruce DeLorenzo's children from a prior marriage. In 2000, several of the children desired to sell their interests in the business. Therefore, DeLorenzo created an Employee Stock Ownership Plan ("ESOP")[1] to purchase the shares owned by all six children on a favorable tax basis. The ESOP is managed by trustees, including DeLorenzo. Plaintiff did not have any interest in the ESOP and was not a participant or beneficiary of the ESOP.

In or about December 2004, Plaintiff was hired by POM serve as its president. The employment agreement provided that Plaintiff's employment would begin on December 27, 2004 and end on January 31, 2006. If Plaintiff remained employed by POM beyond January 31, 2006, his employment would be on an "at will" basis. The agreement also required that as president Plaintiff must perform his duties and responsibilities to the best of his abilities and in the best interest of the company.

Plaintiff alleges that the interrelationship between POM, the ESOP and DeLorenzo, hindered his duties as president. According to the Plaintiff, DeLorenzo refused to recognize any

---

[1]ESOPs are a type of ERISA plan that primarily invests in the stock of the corporation creating the plan. ESOPs are popular with owners of small, closely held businesses because they allow owners to sell a large block of shares to their employees without relinquishing beneficial control of the enterprise. ESOP's are deemed retirement vehicles and therefore, are governed by ERISA.

2

distinction between her own interests and those of POM or the ESOP.  In particular, Plaintiff alleges five instances in his complaint where he refused to partake in activities directed by DeLorenzo that he reasonably believed were illegal or improper.  First, in or around October 2006, DeLorenzo directed POM to loan her approximately $260,000 so that she could pay a debt of the Marital Trust.  Plaintiff opposed the loan as it was not a debt incurred by POM and there were no repayment terms. When DeLorenzo persisted, Plaintiff insisted that DeLorenzo execute a formal corporate resolution for the funds.  Plaintiff suggested to the company's independent auditors that the sum not be shown on the company's books as a loan.

Second, Plaintiff alleges that in or around November of 2006, DeLorenzo requested that her fee as director be first tripled and then quadrupled.  Plaintiff opposed the new fee because of her limited role in the company's management and the fact that former directors received much smaller fees.  When DeLorenzo persisted, Plaintiff again required a formal resolution from the Board of Directors before he would authorize the increase.

Third, Plaintiff alleges that in or around December of 2006, DeLorenzo submitted a Board resolution, prepared by her personal attorney, stating that POM owed her $218,000 in "salary" (including interest) left to her in her husband's will.  Plaintiff contacted corporate counsel, which explained to DeLorenzo that they could not advise the payment until they conducted due diligence on the claim.  A short time later, DeLorenzo removed counsel as corporate counsel.

Fourth, in January 2007, a company owned by DeLorenzo that owns the building that POM operates out of dramatically increased the rental payments.  Plaintiff protested the rent

increase, arguing that the increase was substantially above market rates and that POM would be paying more rent than the other businesses in the same building, including another company owned by DeLorenzo.  Plaintiff alleges that the rental increase was a ploy to extract more money from POM.

Finally in May of 2007, Plaintiff received a request from a law firm that had previously represented DeLorenzo personally and in regard to the ESOP, to begin representing POM with regard to the ESOP, that POM pay them for work previously performed on behalf of DeLorenzo, release the firm from potential malpractice claims and waive any conflicts arising out of the firm's previous representation of DeLorenzo.  Plaintiff objected to the firm's demands and complained to POM's management and counsel.  Within hours of complaining, Delorenzo and several board members, at the behest of DeLorenzo, fired the Plaintiff.

On August 30, 2007, the Defendants removed this action to federal court.  The Defendants removed the action on the basis that Plaintiff's claim is completely preempted by ERISA.

## II. DISCUSSION

Removal jurisdiction is governed by 28 U.S.C. § 1441(a) which states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." "One category of cases over which the district courts have original jurisdiction are 'federal question' cases; that is, those cases 'arising under the Constitution, laws, or treaties of the United

States.' 28 U.S.C. § 1331." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

"The 'well-plead complaint rule' is the basic principle marking the boundaries of federal question jurisdiction of the federal district court." *Id*. (citing *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9-12 (1983). It is only when the plaintiff's "well-pleaded" complaint raises issues of federal law on its face, does the action properly "arise under" federal law and subject it to federal jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 10. The defense of federal preemption generally does not appear on the face of the complaint and therefore does not authorize removal to federal court. *Metropolitan Life*, 481 U.S. at 63.

An exception to the well-pleaded complaint rule is the doctrine of complete preemption. *Lazorko et al. v. Pennsylvania Hospital et al.*, 237 F.3d 242, 248 (3d Cir. 2000). Complete preemption[2] states that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life*, 481 U.S. at 63-64. The complete preemption doctrine therefore transforms a state law cause

---

[2]It should be noted that the doctrine of complete preemption differs from express preemption (also known as substantive preemption). Express preemption, § 514, 29 U.S.C. § 1144, states that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." This provision displaces any state law claims that are related to ERISA plans, but it does not confer federal jurisdiction. *Lazorko*, 237 F.3d at 248. Express preemption merely governs the law that will apply to the state law claims and is generally only raised as a defense. *Id.* Complete preemption on the other hand, is a jurisdictional vehicles that creates a basis for removal to federal court anytime the claim falls within the ambit of § 502. *Id*.

action into a federal cause of action that can be properly brought in federal court. *King v. Marriott International, Inc. et al.*, 337 F.3d 421, 425 (4th Cir. 2003) (citing *Metropolitan Life*, 481 U.S. at 63-64). Complete preemption creates removal jurisdiction even though on the face of the complaint no federal question appears. *Lazorko*, 237 F.3d at 248.

ERISA's civil enforcement provision, section 502(a), 29 U.S.C. § 1332(a), falls within the doctrine of complete preemption. *Metropolitan Life*, 481 U.S. at 62; *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 271 (3d Cir. 2001). As the Supreme Court stated in *Aetna Health Inc. v. Davila*, "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" 542 U.S. 200, 209 (2004) (quoting *Metropolitan Life,* 481 U.S. at 65-66). Claims falling under § 502(a) are in reality, based on federal law. *Id*. at 208. Therefore, any causes of action that comes within the scope of § 502(a) are removable to federal court. *Id* at 209.

For a claim to be completely preempted under § 502(a) and subject to removal, the Third Circuit requires two elements: (1) the plaintiff could have brought the claim under § 502(a); and (2) where "no other legal duty supports [the] claim." *Pascack Valley Hospital, Inc. v. Local 464A UCFW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). Both requirements must be met in order for the claim to be completely preempted. *Engle v. Milton Hershey School*, No. 06-0109, 2007 WL 1365916, at * 4 (M.D.Pa. Jan. 19, 2007).

The Court will first look to whether the Plaintiff could have brought the claim under § 502(a).

6

### A. Availability to bring the Claim under § 502(a)

Defendants claim that Plaintiff's CEPA whistle blower claim[3] could be brought under ERISA's whistle blower provision, § 510, 29 U.S.C. § 1140, via section 502(a) and therefore must be completely preempted.  Within this circuit, claims brought under § 510 are enforced pursuant to section § 502 and therefore are completely preempted.  *Wood v. Prudential Ins. Co.*, 207 F.3d 674, 677 (3d Cir. 2000).

Section 510 states that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter."  29 U.S.C. § 1140. Defendants argue that Plaintiff's claim falls under § 510 and is enforced pursuant to § 502(a) because he was allegedly fired for objecting to actions taken by DeLorenzo in violation of her fiduciary obligations to the ESOP.  Defendants argue that this claim "falls squarely with the protections afforded by ERISA's whistle-blower provision" and allows for federal removal.

The Court finds that Plaintiff could not have brought his claim under section 502(a) because the Plaintiff lacks standing to sue under the statute.  *Pascack Valley Hospital, Inc.*, 388 F.3d at 400 (finding no availability to bring claims under § 502 because the plaintiff did not have standing to sue).  In order to bring suit under § 502 the party must be a participant, beneficiary or

---

[3]CEPA provides that an employer cannot take retaliatory action against an employee for an employee informing a public body that he reasonably believes that actions taken by the employer may illegal, fraudulent or criminal.  N.J.S.A. § 34:19-3.

fiduciary of the ERISA plan. *Metropolitan Life*, U.S. at 65.[4]  Neither party alleges that Plaintiff

is a participant or beneficiary of the ESOP.  Rather, the issue of contention is whether the

Plaintiff is a fiduciary under ERISA.

Under ERISA, fiduciaries are identified as those persons expressly named as such by a

plan.  29 U.S.C. § 1102(a); *Eslava v. Gulf Telephone Co., Inc.*, 418 F.Supp.2d 1314, 1321

(S.D.Ala. 2006).  An individual may also be a fiduciary if they are exercising control over the

management and administration of the plan or the distribution of its assets.  29 U.S.C.

§1002(21)(a).  Specifically:

> a person is a fiduciary with respect to a plan to the extent (i) he
> exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or
> control respecting management or dispositions of its assets, (ii) he
> renders investment advice for a fee or other compensation, direct or
> indirect, with respect to any moneys or other property of such plan,
> or has any authority or responsibility to do so, or (iii) he has any
> discretionary authority or discretionary responsibility in the
> administration of such plan.

29 U.S.C. §1002(21)(a).

Fiduciaries have a duty of loyalty which prohibits them from self dealing in regard to an

ERISA plan they manage. 29 U.S.C. §1106; *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134,

143 n.10 (1985). A duty of care is also imposed on ERISA fiduciaries which requires them to act

---

[4]ERISA's civil enforcement provision, § 502(a)(3), states: A civil action may be
brought–... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which
violates any provision of this subchapter or the terms of the plan, or (B) to obtain other
appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this
subchapter or the terms of the plan; due to him under the terms of his plan, to enforce his rights
under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
29 U.S.C. §1132(a)(3).

as a "prudent person" in making decisions affecting plan assets. 29 U.S.C. §1004(a)(1); *Mass.*

*Mut. Life Ins. Co.*, 473 U.S. at 143 n.10.

The Third Circuit has found that ERISA does not solely impose fiduciary status "on

employers acting in their management capacity." *Haberern v. Kaupp Vascular Ltd. Defined*

*Benefit Pension Plan*, 24 F.3d 1491,1497 (3d Cir. 1994). Where employers make business

decisions that are "not regulated by ERISA, they are not acting as fiduciaries." *Payonk v. HMW*

*Industries, Inc.*, 883 F.2d 221, 225 (3d Cir. 1989).  Furthermore, "when employers wear 'two

hats' as employers and as administrators" fiduciary responsibilities only attach when they

conduct activities in their "'capacity as plan administrator.'"  *Id*; *Noorily v. Thomas & Betts*

*Corp.*, 188 F.3d 153, 158 (3rd Cir. 1999) (finding that an employer is a fiduciary "when

administering a plan but not when designing or making business decisions allowed for by a plan,

even though in all three situations its determinations may impact on its employees").  It does not

attach when they conduct business that is not regulated by ERISA.  *Id*.   In determining whether a

plaintiff is a fiduciary, the court looks to "whether the person is a fiduciary with respect to the

particular activity at issue."  *Jorgensen* v. *Prudential Insurance Co. of America*, 852 F. Supp.

255, 265 (D.N.J. 1994) (citing *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir.

1992)).

Corporate officers are not automatically fiduciaries merely because they possess a title in

the corporation that may have control or authority over ESOP assets. *See Confer* v. *Custom*

*Engineering Co.* 952 F.2d 34, 37 (3d Cir. 1991); *In re Cantrell*, 329 F.3d 1119, 1127 (9th Cir.

2003); *Atwood v. Burlington Industries Equity, Inc.*, No. 92-716, 1994 WL 698314, at *7

(M.D.N.C. 1994).  And even when a corporate officer undertakes business decisions that have a collateral affect on the assets of the corporation, ERISA does not require that he operate solely in the interest of the plan.  *Armstrong et al. v. Amsted Industries, Inc. et al.*, No. 01-2963, 2004 WL 1745774, at *4 (N.D.Ill. July 30, 2004).  Courts hold that fiduciary status does not extend to every action taken by a fiduciary and that only when their actions can be characterized as discretionary acts of plan management or assets do fiduciary obligations attach.  *Paynock*, 883 at 225; *Hamilton v. Carrell*, 243 F.3d 992, 998 (6th Cir. 2001).

In situations involving fiduciary obligations in relation to ESOPs, the issue becomes somewhat more complicated as important actions taken by a corporate officer almost invariably impact the value of an ESOP and could fall under the ERISA definition of fiduciary.  This complexity was artfully stated in *Eckelkamp et al. v. Beste et al.*:

> ESOPs are unique creatures in that there will always exist an overlap between corporate conduct and fiduciary duties. Since the nature of ESOPs requires it to be heavily invested in the corporate employer's stock, rarely will a corporate act not have some impact upon the value of the stock held by the ESOP and therefore, on the value of the ESOP plan assets.

201 F.Supp. 2d 1012, 1021-22 (E.D.Mo. 2002). However, *Eckelkamp* recognized that this intertwined relationship does not always transform all corporate acts into fiduciary acts.  *Id*. at 1022.  The determination rests on whether the individual has "discretionary authority or control regarding management of the plan or its assets" and that this definition is not all en-compassing. *Id.*

In *Martin v. Feilen*, the Eighth Circuit outlined when an individual is a fiduciary in the context of an ESOP stating that "[v]irtually all of an employer's significant business decisions

10

affect the *value* of its stock, and therefore the benefits that ESOP plan participants will ultimately receive." 965 F.2d 660, 666 (8th Cir. 1992). However, the court found that an individual is only a fiduciary under ERISA when engaging in actions that involve investing the ESOP's assets or administering the plan. *Id.* "A broader rule would make ESOP fiduciaries virtual guarantors of the financial success of the plan." *Id.*

Here, the Defendants seek to hold Plaintiff as a fiduciary of the ESOP and subject to ERISA fiduciary status due to Plaintiff's position as the president of POM.[5] The Defendants do not allege that the Plaintiff pays out benefits or regulates the plan's structure, reporting or administration. In essence, they allege that Plaintiff's authority over corporate assets infers control over the ESOP. For support of this assertion, the Defendants point to the same allegations that Plaintiff raises in his complaint to support his CEPA claim. The Defendants assert that Plaintiff's resistance and opposition to actions taken by Delorenzo, such as salary increases, loans to Delorenzo, payment of back salary, and issue regarding corporate counsel, evidence Plaintiff's control over the assets of the ESOP. Though Plaintiff has indirect authority over the assets of the ESOP (with his control over POM as president) there are no allegations regarding the investment of the assets of the ESOP.

With this in mind, the Court declines to extend fiduciary status upon the Plaintiff in this instance. Holding a corporate officer as a fiduciary of an ESOP simply because as an officer he has some control over assets illogically extends fiduciary obligations beyond the extent

---

[5]Neither party has alleged that the Plaintiff is a named fiduciary or trustee of the ESOP. Therefore, Defendant is asking the Court to answer the general question of whether as strictly in exercising his duties as president of POM, Plaintiff is a fiduciary of the ESOP.

applicable by law.  Defendants interpretation of fiduciary would be an unreasonable extension of fiduciary status under ERISA and blur the line between fiduciary decisions and business decisions.  The acts alleged by the Defendants that evidence Plaintiff's control over the assets do not implicate fiduciary status in context of ESOP.  As described in *Martin*, all corporate actions taken by the Plaintiff may have some impact upon the assets of ESOP but it is only when the corporate officer is managing the plan or investing the assets is the Plaintiff acting as a fiduciary. *Martin*, 965 F.2d at 666.  There are no such allegations here.  None of the actions taken by the Plaintiff, as alleged by the Defendants, confers that Plaintiff managed the ESOP or invested the assets of the ESOP.  In fact, there are no allegations in the complaint that Plaintiff had any control or influence over the ESOP.  The Court finds that in this case it would be improper to characterize the Plaintiff as a fiduciary under ERISA if he is not involved in managing plan administration or assets.

Further, the allegations that Defendants point to show that Plaintiff had control over the assets of the ESOP can be properly described as business decisions that are not regulated by ERISA.  For example, Defendants allege that Plaintiff's resistance to increase the compensation of DeLorenzo's director compensation without a formal resolution by the Board of Directors evidences control over the assets.  However, decisions relating to setting corporate salaries have been held to be business decisions that do "not implicate a fiduciary duty under ERISA." *Eckelkamp*, 201 F.Supp.2d at 1023.  Similarly, the remaining acts can also be characterized as day-to-day corporate decisions that do not trigger ERISA fiduciary obligations.  *See Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir. 1990).  The Court finds that decisions such as

approving loans, setting director pay, payment of attorney fees, issues of legal obligations, and payments of rent are business decisions that do not invoke fiduciary status under ERISA.  These actions do not raise fiduciary obligations.  The Court does not see how a president can be properly described as a fiduciary of an ESOP if there are no allegations that he managed the fund or invested the assets of the ESOP.

Therefore, the Court finds that a corporate officer that is not involved in the plan management or investing of plans assets is not a fiduciary under ERISA.  This will be true even in the context of an ESOP where the corporate officer does have some discretionary control over assets of the corporation which in turn are assets of ESOP.  What must be shown is that the corporate office exercised his authority and based his decision not in a corporate management context but as a fiduciary to the ESOP.  Here, under the facts presented, the Plaintiff is not a fiduciary.

The Court also does not take stock in Defendants assertion that Plaintiff by claiming that he had a fiduciary duty to all the shareholders of POM in the Complaint, including the ESOP, evidences that he is an ERISA fiduciary. [See Complaint ¶ 16].  Under the common law, directors and corporate officers are fiduciaries to the corporation and its shareholders.  *In Re OFRA Securities Litigation*, 654 F.Supp. 1449, 1455 (D.N.J. 1987).  Plaintiff's description in paragraph 16 of the Complaint merely describes the general state of a corporate officers duty.  This however does not create ERISA fiduciary obligations as ERISA clearly mandates that an individual is a fiduciary if they are a named fiduciary or trustee of the plan or they fall under the definition of 29 U.S.C. §1002(21)(a).  The Court finds that in this instance, Plaintiff falls in

neither.

Therefore, because Plaintiff is not a fiduciary under ERISA, he would not have standing to bring his claim.  Accordingly, Plaintiff's motion to remand should be granted.

### III. CONCLUSION

For the reasons set forth above, the undersigned recommends that the District Court **GRANT** Plaintiff's motion to remand.  Pursuant to Local Civil Rule 72.1, the parties have ten days from receipt of this Report and Recommendation to file and serve any objections.

s/ Esther Salas
_____
**ESTHER SALAS**
**UNITED STATES MAGISTRATE JUDGE**

14